**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | **Case No. 26-CR-090 (ABJ)** |
| **v.** | : | |
| **TREVON TROXLER,** | : | |
| **Defendant.** | : | |

**<u>GOVERNMENT'S MEMORANDUM IN AID OF SENTENCING</u>**

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully submits this Memorandum in Aid of Sentencing. This memorandum, together with such evidence as may be presented at the sentencing hearing and the government's allocution at the time of sentencing, is intended to outline to the Court relevant matters relating to what the government believes is an appropriate sentence in this case. To inform its allocution, the government has reviewed the application of the advisory Sentencing Guidelines; the Final Presentence Reports ("PSR") prepared by U.S. Probation Officer ("USPO") Ms. Empress Hargis, *see* PSR ECF No. 37; and USPO Ms. Hargis' sentencing recommendation, *see* ECF No. 38; the relevant factors set forth in 18 U.S.C. § 3553; and the Defendant's plea of guilty in this case. Based on that thorough and comprehensive review, and consistent with the plea agreement, the government agreed to cap its allocution at the bottom of the Sentencing Guidelines range as ultimately calculated and adopted by the Court followed by 36 months of Supervised Release. *See* Plea Agreement ECF No. 30 ¶¶4-6.

## I. INTRODUCTION

On May 13, 2026, the Defendant plead guilty to a criminal Information charging Count

One Unlawful Possession of a Firearm and Ammunition by a Person Convicted of a Crime Punishable by Imprisonment for a Term Exceeding One Year, in violation of 18 U.S.C. § 922(g)(1), and Count Two Destruction of Federal Property, in violation of 18 U.S.C. § 1361.

## II. FACTUAL BACKGROUND

On October 12, 2025, at approximately 8:20 p.m., in the 3500 block of Ames Street Northeast in Washington, D.C., Trevon Troxler ("the Defendant") was driving a White Honda Accord with tinted windows, no front license plate, and a rear District of Columbia license plate ("Vehicle-1"). MPD activated emergency lights and sirens to conduct a traffic stop of Vehicle-1, however, the driver of Vehicle-1 did not stop. The driver, subsequently identified as the Defendant, drove Vehicle-1 down Ames Street, making a left onto 35th Street Northeast and passing through a stop sign without stopping.

A Diplomatic Security Service ("DSS") agent attempted to block Vehicle-1 with an unmarked cruiser ("Cruiser-1"), but the Defendant maneuvered around Cruiser-1 and made a left on A Street Southeast and then another left onto Minnesota Avenue Southeast. The Defendant then made a right on East Capitol Street Northeast, driving Vehicle-1 on the opposite side of traffic. Vehicle-1 collided with Cruiser-1 and continued down East Capitol Street Northeast, against the flow of oncoming traffic. The Defendant continued to flee from law enforcement in Vehicle 1, disregarding multiple traffic control signals and traffic laws. Law enforcement continued to follow Vehicle-1 into the 1600 block of Eastern Avenue Northeast. Vehicle-1 ultimately hit Cruiser-1 and an uninvolved Hyundai at a high rate of speed, sending the Hyundai off the roadway into a private home located at 1618 Eastern Avenue Northeast.

After the collision, the Defendant continued to flee in Vehicle-1, traveling northbound on

I-295, swerving in and out of traffic at a high rate of speed. As Vehicle-1 entered the ramp to Route 50, Vehicle-1 hit into Cruiser-1 again. As Vehicle-1 approached 33rd Place Northeast, Vehicle-1 struck a median in the roadway and became inoperable. At that point the Defendant opened the vehicle door, exited the vehicle, and fled on foot.

As officers engaged in a foot pursuit, a DSS agent, who never lost sight of Vehicle-1, went immediately to Vehicle-1 to check the vehicle for any additional occupants. There were none. Meanwhile, other officers pursued the Defendant on foot and never lost sight of him. Officers ultimately apprehended the Defendant at 2300 South Dakota Avenue Northeast, Washington, D.C.

The police cruiser that the Defendant hit during the pursuit, Cruiser-1, incurred more than $4,000 of damage. Cruiser-1 was property of the United States, or of any department or agency thereof.

Following the chase, police recovered a firearm from Vehicle-1, located between the driver's seat and the center console. The firearm was a Glock 29, with serial number BUWT918. The firearm had one round with head-stamp CBC—10 AUTO in the chamber as well as twenty-six rounds with head-stamps CBC—10 AUTO and S&B 10mm Auto in a twenty-eight round capacity magazine. The firearm was equipped with a laser attachment with the marking: "OLIGHT BALDRS BL MR2605315."

## III. SENTENCING CALCULATION

### Base Offense Level

Consistent with the plea agreement, the parties agreed that the following Sentencing Guidelines sections apply:

With respect to Count One (violation of 18 U.S.C. § 922(g)(1)), U.S.S.G. § 2K2.1(a)(4)(B)

Base Offense Level applies due to the Defendant's status as a prohibited person and his possession of a firearm that was capable of accepting a large capacity magazine), producing a Base Offense Level of 20. With respect to Count Two (a violation of 18 U.S.C. § 1361) the applicable Guidelines was U.S.S.G. § 2B1.1(a)(2), which yielded a Base Offense Level 6. The Specific Offense Characteristic under 2B1.1(b)(16)(A) then applied (conscious or reckless risk of death or serious bodily injury) and increased the Adjusted Offense Level to level 14. Finally, the parties agreed that Counts 1 and 2 are not grouped, because they involve separate harms, and under U.S.S.G. § 3D1.4, an additional point is added. As a result, the parties agreed that the Total Offense Level was 21. The parties also agreed that the Defendant has clearly demonstrated acceptance of responsibility for the offense by pleading guilty. Accordingly, the offense level is decreased by two levels. USSG §3E1.1(a). *See* PSR ECF No. 37 ¶38. Moreover, the Defendant has assisted authorities in the investigation or prosecution of the Defendant's own misconduct by timely notifying authorities of the intention to enter a plea of guilty. Accordingly, the offense level is decreased by one additional level. USSG §3E1.1(b). *Id*. ¶39. The parties agreed in the plea agreement that based upon a total offense level of 18 and a criminal history category of III, the guideline imprisonment range is 33 months to 41 months. *See* Plea Agreement ECF No. 30 ¶4.

The Probation Office's calculations differ from the parties' plea agreement estimations with respect to both the Total Offense Level – due to the Probation Office's inclusion of the two-level increase under §3C1.2; and with respect to the criminal history category. *See* PSR ECF No. 37 ¶94. Specifically, USPO Hargis found that the adjustment for Reckless Endangerment During Flight, under §3C1.2 applied because in the course of fleeing from law enforcement, the Defendant drove at a high rate of speed, avoided multiple traffic signals, laws, and traveled on the opposite

side of traffic and hit into a Hyundai, sending the vehicle into a private residence. *See id.* ¶26. Additionally, USPO Hargis calculated the Defendant's Criminal History Score to be 8, placing the Defendant in Criminal History Category IV and yielding a range of 51 months to 63 months. *See id.* ¶¶49 and 91.

**UNITED STATES' ANALYSIS OF THE SENTENCING GUIDELINES**

Even though the Sentencing Guidelines are advisory, *United States v. Booker* provides that sentencing courts "must consult those Guidelines and take them into account when sentencing." 543 U.S. 220, 264 (2005); *United States v. Brown*, 892 F.3d 385, 399 (D.C. Cir. 2018). The Supreme Court has noted that the Guidelines provide "the starting point and the initial benchmark" for sentencing. *Gall v. United States*, 590 U.S. 38, 49 (2007); *see also United States v. Dorcely*, 454 F.3d 366, 375 (D.C. Cir. 2006) ("*Booker* has not changed how the Guidelines range is to be calculated.") Moreover, the Guidelines' recommended sentencing range will ordinarily "'reflect a rough approximation of sentences that might achieve [18 U.S.C.] § 3553(a)'s objectives.'" *Kimbrough v. United States*, 552 U.S. 85, 108-09 (2007) (*quoting Rita v. United States*, 551 U.S. 338, 347-50 (2007)); *Dorcely*, 454 F.3d at 376 (noting that "a sentence within a properly calculated Guidelines range is entitled to a rebuttable presumption of reasonableness").

To calculate a Guidelines sentence, a district court must first select the applicable offense guideline and then select the base offense level within that applicable offense guideline. *United States v. Flores*, 912 F.3d 613, 616 (D.C. Cir. 2019). As the D.C. Circuit has long held, this inquiry must include an evaluation of all relevant conduct that could affect the Guidelines calculation.

> In the post-*Booker* world, the court must calculate and consider the applicable Guidelines range but is not bound by it. Under the Guidelines, "the sentencing range for a particular offense is determined on the basis of all 'relevant conduct' in which the Defendant was engaged and not just with regard to the conduct

> underlying the offense of conviction." *Witte v. United States*, 515 U.S. 389, 393 (1995) (citing U.S.S.G. § 1B1.3). Section 1B1.3 details the conduct the sentencing court may consider in determining the applicable Guidelines range and the commentary to that section states, "Conduct that is not formally charged or is not an element of the offense of conviction may enter into the determination of the applicable guideline sentencing range." U.S.S.G. § 1B1.3, comment., backg'd. *Dorcely*, 454 F.3d at 375.

Notably, based on the facts of this matter and the Defendant's criminal history, are very significant and concerning – *see* PSRs ECF No. 37 – and the fact that the Defendant was on release status supervision for a violent conviction as noted more fully *infra* – all demonstrates that this Court should sentence the Defendant to the bottom of the Sentencing Guidelines range as ultimately calculated and adopted by the Court followed by 36 months of Supervised Release.

## IV. SENTENCING FACTORS

Title 18, United States Code, Section 3553(a), provides numerous factors that the Court shall consider in sentencing Defendant Troxler.

### (1) The nature and circumstances of the offense and the history and characteristics of the Defendant.

#### (A) The nature and circumstances of the offense

Here, the nature and circumstances of the offense counsel in favor of a significant term of imprisonment. The nature and circumstances surrounding the charged offense is very troubling. Indeed, the circumstances of the crime here involved the Defendant fleeing in a vehicle from a federal law enforcement officer when they attempted to block his vehicle by positioning the officer's vehicle in front of the Defendant's vehicle. Subsequently, the Defendant drove his vehicle into the police cruiser, causing more than $4,000 of damage to the cruiser. At the time of ramming into the police cruiser, the Defendant consciously or recklessly caused a risk of death or serious bodily injury. The cruiser was property of the United States. Following the pursuit, police

recovered a firearm from the Defendant's vehicle, located between the driver's seat and the center console.

This illegal possession of a loaded firearm and the fact that the Defendant could have caused death or serious bodily injury to law enforcement officers, combined with the Defendant's prior convictions, is very alarming and posed a significant danger to the officers and our community.

It cannot be overstated that the Defendant actions and possession of a loaded firearm by a convicted felon with Defendant Troxler's criminal history and prior convictions are disturbing and extremely dangerous to our community. The increase of urban shootings and violent crimes involving firearms has shown the negative impact that the unregulated flow of firearms can have on a community. Thus, as a threshold matter, the Defendant's possession of a loaded handgun in a vehicle and his violent actions against law enforcement officers by ramming his vehicle into the officers' vehicle on a public street placed the community at risk. *See e.g.*, *United States v. Gassaway*, No. 21-CR-550 (RCL), 2021 WL 4206616, at *3 (D.D.C. Sept. 16, 2021) (collecting cases in this district holding that unlawful firearm possession is dangerous to the public): *United States v. Howard*, No. 20-MJ-181 (BAH), 2020 WL 5642288, at *2-3 (D.D.C. Sept. 21, 2020) (making the same observation); *United States v. Cole*, 459 F. Supp. 3d 116, 120 (D.D.C. 2020) (noting that a firearm "has the great potential to escalate into violence"). Judges of this Court have warned against discounting the inherent danger associated with loaded firearms. *See, e.g.*, *Blackson*, 2023 WL 1778194, at *7-8 (noting that the absence of evidence of "use" "does little to detract from" the danger posed by a firearm "loaded with 19 rounds of ammunition in an extended magazine, . . . more ammunition than the

gun was originally manufactured to carry, thereby increasing its potential to do greater harm" and placement "at the ready, on his person, and easily within reach"), *aff'd*, *United States v. Blackson*, No. 23-3020, 2023 WL 2663034 (D.C. Cir. Mar. 28, 2023); *see also United State v. Kent*, 496 F. Supp. 3d 500, 502 (D.D.C. 2020) (holding that a defendant should be detained pretrial in part because "the firearm recovered from the defendant's person had a round already chambered, making the circumstances even more troubling"), *aff'd* (D.D.C. Nov. 5, 2020). Here, the loaded firearm recovered in this case had many of these frightening characteristics because it was loaded with one round in the chamber and ready to fire.

Furthermore, the fact that the Defendant, despite being unable to legally possess a firearm and being on a previously court ordered release status shows that the Defendant obtaining a loaded firearm in this case is very terrifying. In fact, the Defendant could not have possessed the loaded firearm legally due to his status as a felon, and therefore, he must have had an illicit source for the firearm, further demonstrating the potential dangerousness of this Defendant. Accordingly, the government respectfully avers that the Defendant is a significant danger to the community, and his criminal actions in this matter demonstrate that that the Defendant should be incarcerated as outlined in his plea agreement followed by 36 months of Supervised Release, is in the interests of justice and would punish the Defendant appropriately.

**(B) The history and characteristics of the Defendant**

The Defendant is a 31-year-old man who has previous adult convictions as outlined in the PSR report. More broadly, the Defendant's prior periods of incarceration and supervision have done little to deter the Defendant's criminal behavior. He has had his supervision revoked or violated his previous release conditions: for example, the Defendant's 2014 Unauthorized

Use of a Vehicle and Receiving Stolen Property conviction - *see* PSR No. 37 ¶44; and subsequent 2015 Attempted Assault with A Dangerous Weapon and Unlawful Possession of a Firearm (Crime of Violence) conviction for failure to obey all laws, failure to report for office visits, non-compliance with drug testing, and failure to follow through with supervision officers' instructions - the facts of that case were outlined in the PSR as: "[o]n August 28, 2015, MPD responded to a shooting at 1220 Crittenden Street, NW/DC. Upon arrival, the victim was located suffering from a gunshot wound to the shoulder and a graze wound to the neck. During an area canvas, officers located one shell casing and one live round from an apparent .380 caliber handgun, a black flip phone, and a black Samsung phone in the backyard of the residence. Approximately 15 minutes after the shooting, an unidentified male was located near the crime scene in possession of a Berreta 9mm handgun. Officers were unable to determine if the individual was involved, therefore he was taken into custody for Carrying a Pistol and later released.

The victim told police he was punched in the head while walking home and the suspect stated, "Give me all you got." The two males began to fight when the suspect pulled out a gun, shot him and fled the scene on a bicycle. During the altercation, the victim believed he and the suspect both dropped their phones which officers located on scene. He also reported he did not know the male suspect. On September 2, 2015, the victim returned to the police station and said he was hesitant to provide any information on the suspect because he was fearful and did not want to be labeled as a "snitch." He was able to provide officers with a picture of the suspect from Instagram which he identified as the Defendant. The Defendant was taken into custody that day after a brief foot chase." *See id.* ¶45.

Nevertheless, the Defendant has had ample opportunities and court supervisions that provided him with the resources to rehabilitate himself and contribute to our community. Sadly, the Defendant has chosen not to do so. On the contrary, he has chosen to disregard the court's directives and terms of supervision and instead persisted in criminal conduct and his violent actions against law enforcement officer in this case that has culminated in his conviction for the instant matter - necessitates a significant period of incarceration by this Court.

In making its current sentencing recommendation to the Court, the government has also reviewed the Defendant's Personal and Family Data as outlined in the PSR, which described the Defendant's relationship with his family and family history. *See id*. ¶¶55-64. USPO Ms. Hargis found, *inter alia*, that the Defendant denied being subjected to abuse or neglect. *Id*. at ¶60. Finally, the Defendant's Substance Abuse backgrounds as outlined in his PSR, revealed the Defendant had a minimal history with substance abuse. *Id*. ¶¶72-74.

**(C) The Need to Afford Adequate Deterrence to Criminal Conduct, and the Need to Protect the Public from Further Crimes of Defendant**

The Court must also consider "the need for the sentence imposed . . . to afford adequate deterrence to criminal conduct [and] to protect the public from further crimes of the Defendant . . . ." 18 U.S.C. § 3553(a)(2)(B), (D). Importantly, this Court is well aware of the impact that loaded firearms have had on the District of Columbia, and the need to deter that conduct. A sentence that provides both specific and general deterrence is especially important in this case because the Defendant possessed a loaded firearm while in a vehicle on a public street in our community. If our community is to have any hope of stemming the tide of illegal loaded firearms to prevent any more tragedies in our community, the Defendant must be punished accordingly.

Simply put, this pattern of criminal conduct by this Defendant, his violent contact with law enforcement officer by ramming their vehicle, his possession of a loaded firearm in this case, and coupled with his disregard for the terms of supervision in his previous conviction, necessitates a term of incarceration at the bottom of the Sentencing Guidelines range as ultimately calculated and adopted by the Court followed by 36 months of Supervised Release. Indeed, a term of incarceration in this case will serve as a specific deterrence for this Defendant and will make clear to him that the repeated recidivism will only result in harsher sentences, and a sentence as outlined herein for this Defendant by this Court offers general deterrence to others by demonstrating to the community that repeated crimes, violent actions against law enforcement officers, or possession of illegal loaded firearm will not be tolerated.

**(D) The need to avoid unwarranted sentencing disparities among defendants with similar records**

The goal of minimizing unwarranted sentencing disparities in § 3553(a)(6) is "only one of several factors that must be weighted and balanced," and the degree of weight is "firmly committed to the discretion of the sentencing judge." *United States v. Coppola*, 671 F.3d 220, 254 (2d Cir. 2012). The § 3553(a) factors that this Court assesses are "open-ended," with the result that "different district courts may have distinct sentencing philosophies and may emphasize and weigh the individual § 3553(a) factors differently; and every sentencing decision involves its own set of facts and circumstances regarding the offense and the offender." *United States v. Gardellini*, 545 F.3d 1089, 1093 (D.C. Cir. 2008). "[D]ifferent district courts can and will sentence differently—differently from the Sentencing Guidelines range, differently from the sentence an appellate court might have imposed, and differently from how other district courts might have sentenced that defendant." *Id*. at 1095. As discussed *supra*, this Court should sentence the Defendant to the

bottom of the applicable guideline term as ultimately determined by the Court followed by 36 months of Supervised Release. Indeed, the government's requested sentence is reasonable, as it strikes the balance between considering the Defendant's background and the facts of this case.

Specifically, the government's recommendation takes into account the additional fact that, at the time of the instant offense, the Defendant was on supervision for his 2015 D.C. Superior Court Attempted Assault with a Dangerous Weapon and Unlawful Possession of a Firearm (Crime of Violence) conviction. Despite being given multiple opportunities by other judicial officers in his numerous prior convictions to not commit any additional criminal offenses, the Defendant continued to reoffend and, in the instant cases, acquired a loaded firearm where citizens lived nearby. These facts demonstrate that the Defendant was ready, willing, and able to commit another crime against members of the community. *See United States v. Washington*, 907 F. Supp. 476, 486 (D.D.C. 1995) ("[P]ossession by a felon of a fully loaded semi-automatic pistol suggests that the Defendant presents an extreme safety risk to the public."). Thus, the Defendant's dangerousness cannot be overstated, and he should be sentenced at the bottom of the Sentencing Guidelines range as ultimately calculated and adopted by the Court followed by 36 months of Supervised Release for all the reasons stated herein.

## V. CONCLUSION

For the foregoing reasons, the United States recommends that this Court sentence Defendant Troxler accordingly followed by 36 months of Supervised Release is appropriate.

Thus, the government respectfully advances that its recommended sentence would therefore reflect the seriousness of the offense, promote respect for the law, and provide just punishment for the offense.

Respectfully submitted,

JEANINE FERRIS PIRRO
UNITED STATES ATTORNEY

By: *_/s/ Emory V. Cole_*
EMORY V. COLE
PA. Bar No. 49136
LAUREN IBANEZ
NJ Bar No. 261642019
Assistant United States Attorneys
601 D Street, N.W.
Washington, D.C. 20530
Emory.Cole@usdoj.gov